IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JOSHUA A. CARTER, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| A-COM ENTERPRISES, INC., | |
| Defendant. | |

## **COMPLAINT FOR DAMAGES**

COMES NOW, Joshua Carter ("Plaintiff"), by and through the undersigned counsel, and files his Complaint against A-COM Enterprises, Inc. ("Defendant") for interference with and retaliation for exercising his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.,* showing the Court the following:

### INTRODUCTION

1.

Defendant employed Plaintiff as a System Engineer on its IT helpdesk. Defendant approved Plaintiff for intermittent medical leave under the FMLA on or around February 22, 2021. Plaintiff exercised his rights under the FMLA by using

intermittent medical leave. Defendant subsequently notified Plaintiff of various allegations of substandard work, giving Plaintiff a verbal warning, written warning, and terminated Plaintiff's employment all in a single meeting on April 12, 2021. Plaintiff contends that Defendant's articulated reason for his termination is pretext for terminating Plaintiff's employment in retaliation for exercising his rights under the FMLA.

## **JURISDICTION AND VENUE**

1.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343.

2.

Defendant engages business in the Middle District of Georgia.

3.

Venue is appropriate in this Court.

## **PARTIES**

4.

Plaintiff is a citizen of the State of Alabama.

5.

Plaintiff submits to the jurisdiction of this Court.

6.

Defendant is a for-profit corporation licensed to do business in Georgia.

7.

All times during the Plaintiff's employment, Defendant conducted business within this District.

8.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Wayne W. Beck, 6915 Gaines Ridge Rd, Columbus, GA 31909.

## FACTUAL ALLEGATIONS

9.

Defendant hired Plaintiff for employment on January 16, 2020.

10.

Defendant continuously employed Plaintiff from January 16, 2020, until Defendant terminated Plaintiff's employment on or about April 12, 2021. *See* Plaintiff's Exhibit A.

11.

Plaintiff was employed by Defendant on a full-time basis. Plaintiff was scheduled to work for Defendant for eight hours each business day totaling 40 hours per week.

12.

Defendant employed Plaintiff at 7521 Veterans Parkway, Columbus, Georgia 31909.

13.

Defendant employed Plaintiff at a worksite where 50 or more employees are employed within 75 miles of that worksite.

14.

Defendant is engaged in commerce or in any industry or activity affecting commerce.

15.

Defendant employs 50 or more employees for each working day during each of 20 or more calendar workweeks in 2020 or 2021.

16.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

17.

On or about January 16, 2020, Defendant hired Plaintiff as a System Engineer, I assigned to the Helpdesk.

18.

Approximately one week after hiring Plaintiff, Defendant reassigned Plaintiff to field duty, assisting clients with Helpdesk functions from the field.

19.

On or about February 17, 2021, Plaintiff submitted a request to Defendant for leave under the FMLA.

20.

On or about February 22, 2021, Defendant approved Plaintiff intermittent leave under the FMLA.

21.

On February 22, 2021, Plaintiff was absent from work for two hours for leave under the FMLA.

22.

On February 26, 2021, Plaintiff was absent from work for four hours for leave under the FMLA.

23.

On March 02, 2021, Andy Rice ("Rice"), Defendant's president, and Brian Bledsoe ("Bledsoe"), Defendant's service manager, met with Plaintiff during which, upon information and belief, they advised Plaintiff that they believed it was in the best interest of Plaintiff's health to limit his work to the helpdesk. Upon information and belief, Rice and Bledsoe informed Plaintiff that he was required to discontinue field work and resume working with the helpdesk from a fixed location immediately, ending his ability to participate in field duty activities.

24.

On March 04, 2021, Plaintiff was absent from work for three hours for leave under the FMLA.

25.

On March 05, 2021, Plaintiff was absent from work for eight hours for leave under the FMLA.

26.

On March 19, 2021, Plaintiff was absent from work for eight hours for leave under the FMLA.

27.

On March 24, 2021, Plaintiff was absent from work for eight hours for leave under the FMLA.

28.

On April 08, 2021, Plaintiff was absent from work for eight hours for leave under the FMLA.

29.

On April 09, 2021, Plaintiff was absent from work for eight hours for leave under the FMLA.

30.

On April 12, 2021, Defendant requested that Plaintiff attend a meeting with Rice and Bledsoe where they presented Plaintiff with a first written verbal warning, a second written warning, final written warning, and notice of termination. *See* Plaintiff's Exhibit B.

31.

The first verbal warning alleged that on April 2, 2021, Plaintiff "claimed 3.4 hours and only closed 4 tickets." It further alleged that Plaintiff "logged in and out of queue 11 times," and had engaged substandard work and violated company policies. *Id.*

32.

Plaintiff had experienced functionality issues with Defendant's helpdesk software causing him to have to repeatedly log in to the systems after the system involuntarily logged him out.

33.

Plaintiff had been experienced issues with the helpdesk system repeatedly logging him out of the system involuntarily for an approximate year.

34.

Prior to April 2, 2021, Defendant had not subjected Plaintiff to disciplinary action for the number of times that he logged in and out of the helpdesk system in a day.

35.

Plaintiff reminded Rice and Bledsoe that the number of calls he had taken that day was indicative of a lower call volume to the helpdesk that day.

36.

Defendant's Employee Handbook states, "lunch breaks are not mandatory; however, it is suggested and recommended that each employee take advantage of a lunch hour to take a break. A good rule of thumb to follow: if you leave your desk for lunch clock out. If you are eating at your desk and working through lunch you do not clock out." *See* Plaintiff's Exhibit C.

37.

On April 12, 2021, Rice and Bledsoe issued a PIP that notified Plaintiff of a second written warning for violation of company policies. The PIP alleged that on April 5, 2021, Plaintiff "left for the day without and getting approval or notifying supervisor before leading. He informed the Service Coordinator that he might leave for the day at 11:35 but did not contact his supervisor. This is a violation of company policy. *See* Plaintiff's Exhibit D.

38.

Defendant's Employee Handbook, Defendant's attendance policy states: "We all get sick and emergencies will always arise; however, Acom, as with any group effort operates effectively with a commitment from everyone. Therefore, attendance and punctuality are very important. If you must be late, or absent on a particular day, you must speak directly with your supervisor. If your supervisor is unavailable, it is acceptable to leave a message. It is **not** acceptable to text your supervisor that you will not be at work. It's your responsibility to keep the manager/supervisor informed of an ongoing emergency situation." *See* Plaintiff's Exhibit E, *Acom Integrated Solutions Employee Handbook*, p. 19-20.

39.

On February 11, 2021, Plaintiff notified Jenicah Synder ("Synder"), Defendant's service coordinator, via text message that because of illness, he was leaving work early: "[h]ey. I think I'm gonna call it. I've spend the last 20 minutes puking." Plaintiff's Exhibit F.

40.

Defendant did not subject Plaintiff to disciplinary action for notifying Synder on February 11, 2021, that he felt ill and needed to end his shift early that day.

41.

On February 15, 2021, Plaintiff notified Synder via text message at 7:24 AM that he was unable to report to work that day due to illness: "hey, I have a super bad migraine. I'm not gonna be able to make it today." Plaintiff's Exhibit G.

42.

Defendant did not subject Plaintiff to disciplinary action for notifying Synder on February 15, 2021, that he had a bad migraine and therefore would not be able to make it to work that day.

43.

On March 11, 2021, Plaintiff notified Synder via text message at 7:11 AM that he was unable to report to work that day due to a continuing migraine headache. *See* Plaintiff's Exhibit H.

44.

Defendant did not subject Plaintiff to disciplinary action for notifying Synder on March 11, 2021, that he continued to have a migraine headache and therefore would not attend work that day.

45.

On March 12, 2021, Plaintiff notified Synder via text message at 11:57 AM that he needed to depart from work early that day due to a headache was unable to report to work that day due to an ongoing migraine headache. *See* Plaintiff's Exhibit I.

46.

On April 12, 2021, Rice and Bledsoe presented Plaintiff with a final written warning (and termination) because a customer complained that the customer's repair request was not satisfied when the customer represented to Plaintiff that the repair needed was located across the street instead of across town. Plaintiff's Exhibit J.

47.

On April 12, 2021, Defendant terminated Plaintiff's employment.

## COUNT I
## INTERFERENCE WITH THE EXERCISE OF RIGHTS UNDER THE FMLA

48.

Plaintiff re-alleges paragraphs 1-47 as if set forth fully herein.

49.

Plaintiff was an "eligible employee" for FMLA benefits on January 16, 2021, until Defendant terminated him employment on April 12, 2021.

50.

On January 16, 2021, Plaintiff had been employed by Defendant for at least one year.

51.

On January 16, 2021, Plaintiff had performed 1,250 hours of work for Defendant as an employee.

52.

Defendant was engaged in commerce.

53.

Plaintiff worked in Defendant's facility that employed at least 50 employees within a 75-mile radius.

54.

Plaintiff was engaged in intermittent leave under the FMLA.

55.

Defendant was aware that Plaintiff was engaged in intermitted leave under the FMLA.

56.

Defendant terminated Plaintiff's employment on April 12, 2021.

57.

Defendant's reason for terminating Plaintiff's employment is pretext.

58.

Defendant terminated Plaintiff's employment because of Plaintiff's use of intermitted leave under the FMLA.

59.

Defendant's termination of Plaintiff's employment denied Plaintiff the benefit of leave under the FMLA to which he is entitled.

60.

Defendant's interference of Plaintiff's rights under the FMLA resulted in Plaintiff suffering the loss of wages, benefits, incurring compensatory damages, attorney's fees, costs, and expenses to which Defendant is liable to Plaintiff.

61.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

## COUNT II
## RETALIATION FOR EXERCISING FMLA RIGHTS

62.

Plaintiff re-alleges paragraphs 1-59 as if set forth fully herein.

63.

Plaintiff took intermittent leave under the FMLA from February 2021 – April 2021.

64.

Defendant terminated Plaintiff's employment on or about April 12, 2021.

65.

Defendant's termination of Plaintiff's employment denied Plaintif the benefit of continued employment with no good faith or reasonable basis for terminating his employment.

66.

Defendant terminated Plaintiff's employment because Plaintiff's use of FMLA qualifying leave cause him to be unavailable for work intermittently.

67.

Defendant was aware of Plaintiff's use of FMLA qualifying medical leave.

68.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

**WHEREFORE**, Plaintiff prays that the Honorable Court enters judgment in his favor and grant him the relief as follows:

(a) A declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the FMLA;

(b) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein;

(c) General damages for mental and emotional suffering caused by Defendant's misconduct;

(d) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(e) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(f) Reasonable attorney's fees and expenses of litigation with any and all other costs associated with this action as provided by the FMLA;

(g) Trial by jury as to all issues;

(h) Prejudgment interest at the rate allowed by law; and

(i) All other relief to which he may be entitled.

Respectfully submitted the 12 day of January, 2022.

**MORGAN & MORGAN, PA**

 /s/ *Anthony Dawkins*
Anthony Dawkins
Georgia Bar No. 157904
Attorney for Plaintiff

191 Peachtree St. NE, Suite 4200
P.O. Box 57007
Atlanta, GA  30343
Direct: (404) 965-1872
Fax: (404) 720-3839
adawkins@forthepeople.com